Gustavo Ponce, Esq.
Nevada Bar No. 15084
KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Rd., Ste 100
Las Vegas, Nevada 89148
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523
gustavo@kazlg.com

*Counsel for Plaintiff Tyler Baker
and the Putative Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| TYLER BAKER, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IGNITE INTERNATIONAL, LTD.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C §§ 227, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

//
//
//
//
//
//
//
//
//
//

- 1 -
CLASS ACTION COMPLAINT

## NATURE OF THE CASE

1. Plaintiff Tyler Baker ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the unlawful actions of Ignite International, LTD. ("Ignite" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own experiences and, as to all other matters, upon information and belief including due investigation conducted by his attorneys.

2. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3. Ignite has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

5. This Court has personal jurisdiction over Ignite because, during the relevant time period, Ignite's principal place of business was in the State of Nevada. Ignite's nationwide marketing campaign, which caused harm to purported class members across the country, emanated from Las Vegas, Nevada. As such, Ignite has purposefully availed itself of the laws and markets of the State of Nevada and this District.

6. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) and (c) because Ignite's principal place of business is in Las Vegas, Nevada. As such, Ignite resides in the District of Nevada.

## PARTIES

7. Plaintiff is an individual who, at all relevant times, resided in Underhill, Vermont.

8. Defendant Ignite International, LTD. is a limited liability company formed under the laws of Wyoming with its principal place of business in Las Vegas, Nevada.

9. Ignite engages in the business of cultivation, development, extraction, and distribution of cannabis and cannabis-infused products, as well as the production and distribution of cannabis-related accessories. Ignite is listed on the Canadian Stock Exchange and currently includes branding, marketing, licensing, sales and distribution, across the United States, Canada, the United Kingdom and Mexico.

10. Ignite is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

12. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate

- 3 -
CLASS ACTION COMPLAINT

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

14.  Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. At §§ 12-13; *see also, Mims*, 132 S. Ct. at 744.

15.  As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

16.  The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii)

17. Text messages are calls and are subject to the TCPA. *See, e.g., Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

18. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are— that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

19. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

20. To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (finding Defendant "did not show a single instance where express consent was given before the call was placed.")

21. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

22. Plaintiff Tyler Baker is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number (802) 238-XXXX.

23.     On November 4, 2004, Plaintiff registered his cellular number with the National Do Not Call Registry.

24.     On or about May, 16 2020, at approximately 8:55 p.m., Defendant sent an automated text message to Plaintiff Baker's cellular telephone number from the telephone number (765) 388-3138.

25.     A true and correct copy of the May 16, 2020 text message sent by Defendant is reproduced below:



26.     Plaintiff did not give "prior express consent" to receive text messages from Defendant or an ATDS.

27.     Plaintiff and Defendant do not have an established business relationship.

28.     The text message Ignite sent to Plaintiff consisted of a pre-written template of impersonal text, and was identical to text messages Defendant sent to other consumers.

29.     The language in the message was automatically generated and inputted into pre- written text template without any actual human intervention in the drafting

or sending of the messages; the same exact message was sent to thousands of other consumers.

30. The telephone system Ignite used to send the messages constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

31. Upon information and belief, Ignite stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers at the same time.

32. Upon information and belief, no human directed any single text message to Plaintiff's number.

33. In addition, upon information and belief the hardware and software combination utilized by Ignite has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

34. Ignite did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on his cellular telephone.

35. Receipt of Defendant's unauthorized message drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

36. Further, Defendant failed to maintain any do not call policies and procedures and review the DNC registry prior to placing its repeated and unsolicited texts to Plaintiff's telephone number.

37. Defendant did not place the text message for an emergency purpose.

38. Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

## STANDING

39. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which

is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *The "Injury in Fact" Prong*

40. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

41. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent a telephone message to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

42. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by texting his cellular telephone, and did this with the use of an ATDS, despite Plaintiff's registering his telephone number with the National Do Not Call Registry. Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text message. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### *The "Traceable to the Conduct of Defendant" Prong*

43. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

44. The above text message was directly and explicitly linked to Defendant. Defendant's text message identified the Defendant as "Ignite" the party that attempted to solicit business from Plaintiff. This text message is the sole source of

- 8 -
CLASS ACTION COMPLAINT

Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

***The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong***

45. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

46. In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

47. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> **ATDS Class**:
> All persons throughout the United States (1) to whom Defendant delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification.

> **DNC Class**:
> All persons within the United States who, within the four years prior to the filing of this Complaint, received more than one text message to their cellular telephone numbers within any 12-month period by or on behalf of the same entity, without their prior express consent, while listed on the National Do Not Call Registry.

49. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

50. Plaintiff reserves the right to redefine the classes and to add subclasses

as appropriate based on discovery and specific theories of liability.

51. <u>Numerosity</u>: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

52. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

53. <u>Ascertainability</u>: The members of the class are ascertainable because the class is defined by reference to objective criteria.

54. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

55. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to his cellular telephone from an ATDS. Thus his injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to deliver a text message to Plaintiff's cellular telephone number.

56. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

57. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

58. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

59. <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

60. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

61. Plaintiff will vigorously pursue the claims of the members of the class.

62. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

63. Plaintiff's counsel will vigorously pursue this matter.

64. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

65. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

66. <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

67. <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a. What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. Whether Defendant sent text messages to telephone numbers listed on the Do Not Call Registry.

c Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to Class Members;

d. Whether Defendant's conduct violated the TCPA;

e. Whether Defendant should be enjoined from engaging in such conduct in the future; and

f. The availability of statutory penalties.

68. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of

litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

69. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

70. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

71. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### Violations of the Telephone Consumer Protection Act

### 47 U.S.C. § 227(b)(1)(A)(iii)

72. Plaintiff incorporates herein all preceding factual allegations.

73. Defendant and/or its agents placed unsolicited text messages to Plaintiff and the other members of the TCPA Class using an ATDS.

74. Defendant made these text messages *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

75. Defendant's conduct was negligent, or willful or knowing.

76. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

77. Plaintiff and members of the putative TCPA class are also entitled to and

do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by sending texts, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

78. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing texts to Plaintiff's cellular telephone number without prior express written consent.

79. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

## COUNT II
## 47 U.S.C. § 227(c) (Do Not Call Registry)

80. Plaintiff re-alleges and incorporates the above paragraphs as if fully set forth herein.

81. Plaintiff and members of the DNC Class received more than one marketing text message within a 21-month period, by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

82. Defendant's call caused Plaintiff and members of the DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

83. As a result of the aforementioned violations of the TCPA, Plaintiff and the DNC Class are entitled to an award of up to $1,500 for each call or text message in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

84. Additionally, Plaintiff and members of the DNC Class are entitled to and seek injunctive relief prohibiting such future contact.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

- Determining that this action is a proper class action;

- Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

- Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

- Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

- Enjoining Defendant from continuing its violative behavior, including continuing to place text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

- Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B) in the amount of $500.00 to Plaintiff, and each class member;

- Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3);

- Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

- Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Federal Rule of Civil Procedure 23;

- Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

- Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and the Class Members are entitled to, and demand, a trial by jury.

Dated:  June 23, 2020                                      **KAZEROUNI LAW GROUP, APC**


By: /s/ Gustavo Ponce
Gustavo Ponce, Esq.
6069 S Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
*Attorneys for Plaintiff*